ORIGINAL

Priority Send / Enter / Closed / JS-5/JS-6 / JS-2/JS-3 / Scan Only

Link to: 49

FILED
CLERK, U S DISTRICT COURT
APR 13 2005
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
APR 14 2005
CENTRAL DISTRICT OF CALIFORNIA
BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cleopatra Records, Inc., <br><br> Plaintiff / Counterdefendant, <br><br> v. <br><br> William Bruce Bailey et al., <br><br> Defendants / Counterclaimants. | Case No. CV 04-3120 GAF (FMOx) <br><br> **MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS** |

I.

**INTRODUCTION & SUMMARY**

In this case, members of the well-known band Guns N' Roses object to the release and marketing of an album entitled "Hollywood Rose: The Roots of Guns N' Roses," (the "Album") which consists of the 20-year-old recordings of Hollywood Rose – a long defunct band of musicians, former members of which went on to achieve great fame as members of Guns N' Roses. Plaintiff Cleopatra Records, Inc., producer of the Album, sued William Bruce Bailey, a.k.a. Axl Rose, Saul Hudson, a.k.a. Slash, Michael Kagen, and Guns N' Roses Music (collectively "Defendants"), seeking a

54

1  declaration that the Album did not violate copyright, trademark, unfair competition, or
2  right of publicity laws. Defendants counterclaimed alleging that both the Album and
3  its marketing violated these laws.[1]

4  On November 23, 2004, this Court granted summary judgment in favor of
5  Plaintiff on all of its claims for declaratory relief, finding that the Album, itself, did not
6  violate any of the aforementioned laws. This finding necessarily encompassed the
7  merits of Defendants' counterclaims related to the actual Album. However, the Court
8  granted Defendants' request for further discovery under Federal Rule of Civil
9  Procedure 56(f) as neither side presented evidence related to the **marketing** of the
10 Album. In a status conference the following week, the Court gave Defendants until
11 February 25, 2005 to complete discovery on their claims of unlawful
12 marketing/advertising.

13 Plaintiff now renews its motion for summary judgment on Defendants'
14 counterclaims. Despite the fact that the Court granted Defendants' 56(f) request, they
15 have propounded no discovery related to the marketing of the Album. (Cohen Decl. ¶
16 2). Plaintiff, however, volunteered what it attests to be the "only advertisements
17 Cleopatra produced for the Album." (Perera Sec. Supp. Decl. ¶ 8). These consist of
18 six one-page advertisements placed in specialized publications.

19 Because these advertisements essentially depict the album itself and contains
20 remarks similar to those found on the album jacket, the Court finds that the
21 advertisements, like the Album, do not violate trademark, right of publicity, or unfair
22 competition laws. Defendants' recognize the substantial similarity between the Album
23 and the advertisements and state that the "Opposition is made because Rose and
24 GNR respectfully disagree with the Court's prior rulings and desire to protect their

---

[1] Specifically, Defendants sued for: 1) trademark infringement; 2) false designation of origin; 3) California statutory and common law right of publicity violations; and 4) California unfair competition law violations. (Counterclaims ¶¶ 14-36). Defendants did not counterclaim for copyright infringement.

1  rights on appeal." (Opp. at 1). Accordingly, Plaintiff's motion for summary judgment
2  on Defendants' counterclaims is **GRANTED**.[2]

## II.

## DISCUSSION

### A. THE LEGAL STANDARD ON SUMMARY JUDGMENT

When addressing a motion for summary judgment, this Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. See id. at 256. The nonmoving party's evidence enjoys a presumption of veracity, and all inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party. See Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 456 (1992); Anderson, 477 U.S. at 255.

### B. DEFENDANTS' LANHAM ACT AND UNFAIR COMPETITION CLAIMS

Defendants assert that the advertisements infringe on their protected trademark and mislead consumers into believing that they endorse the Album. It is undisputed that Defendants own the rights to the trademark "Guns N' Roses," and that Plaintiff used the mark in the ads without authorization. However, as with the Album, Plaintiff is entitled to a nominative fair use defense under the three-prong test established by the Ninth Circuit.

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much

---

[2] Although this motion is made and granted as to the entirety of Defendants' counterclaims – the Album and the advertisements – the Court takes judicial notice of its November 23, 2004 Order granting Plaintiff's motion for summary judgment on the Album, which necessarily encompasses Defendants' counterclaims as to the Album itself. See United States v. Author Serv., Inc., 804 F.2d 1520, 1523 (9th Cir. 1986) ("It is well established that a court may take judicial notice of its own records."). Having now incorporated that Order by reference, the Court will address Defendants' claims in shortened form and only as they relate to the advertisements.

of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

New Kids on the Block v. New Am. Publ'g, 971 F.2d 302, 308 (9th Cir. 1992).

### 1. Plaintiff's Product is Not Readily Identifiable Without Use of the Mark

The Court has already found that the underlying product, the Album, is not readily identifiable without the use of the mark. Similarly, the mark is used in the advertisements for the Album solely for the purpose of identifying the underlying product, the historical origins of GNR. (See Order of 11/23/04 at 17).

### 2. Plaintiff Used Only So Much of The Mark as Was Necessary

Like the Album, the advertisements use only the words "Guns N' Roses," not the typeface or logo. Defendants' only argument against this prong is that "the advertisements produced with the moving papers use a different and larger font than does the Album." (Opp. at 8). However, a picture of the front of the Album is the primary feature in all six advertisements. (Perera Sec. Supp. Decl., Exs. A-F). While each of the six repeats the name of the Album at the top, "the roots of guns n' roses" always appears below "Hollywood Rose" and in type roughly one-quarter of the size, much the same as on the Album. (Id., Exs. A-F). Although two of the advertisements use a different font than that appearing on the Album, Defendants' do not claim that they are done in the distinctive lettering of the trademark. See New Kids, 971 F.2d at 308 n.7 (explaining the second prong by stating that "a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering); Volkswagenwerk Aktiengesellschaft v. Church, 411 F.2d 350, 352 (9th Cir.1969) (discussing that the defendant "did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem").

As the Court pointed out previously, "[a]lthough Plaintiff could describe its product without any reference at all to Guns N' Roses, recordings by the little-known and short-lived band 'Hollywood Rose' have little meaning without the additional information that the recordings have a historical relationship to the famous band Guns N' Roses." (Order of 11/23/04 at 18 citing Playboy Enters., Inc. v. Welles, 279 F.3d 796, 803-04 (9th Cir. 2002) and Brother Records, Inc. v. Jardine, 318 F.3d 900 (9th Cir. 2003)). Thus, the advertisements like the Album used only as much of the mark as was reasonably necessary to identify Guns N' Roses, i.e., the words themselves, and therefore satisfies the second prong.

### 3. Plaintiff Has Done Nothing to Suggest Sponsorship or Endorsement By Defendants

The advertisements do not suggest sponsorship by Defendants. The fact that "the roots of guns and roses" consistently appears in significantly smaller font size than the name "Hollywood Rose," weighs in Plaintiff's favor. See Brother Records, 318 F.3d at 908 (finding that a party's use of the protected mark on an album failed the third prong where it was displayed more prominently than the rest of the title); see also Rostropovich v. Koch Int'l Corp., 34 U.S.P.Q.2d 1609, 1612 (S.D.N.Y. 1995) (finding likelihood of confusion as to endorsement in an infringement analysis where the user prominently displayed the owner's mark in large print).

Defendants argue that the pictures used in one of the ads suggests endorsement. (Perera Sec. Supp. Decl., Ex. C). However, these are the same pictures appearing on the Album insert, which the Court has already found not misleading because the photographs accurately depict Hollywood Rose band members as they appeared at the time of the Album's recording. (See Order of 11/23/04 at 19-20 citing Benson v. Paul Winley Record Sales Corp., 452 F. Supp. 516, 518 (S.D.N.Y. 1978) (finding likelihood of confusion as to endorsement in an infringement analysis where the album matched a current picture of a recently famous

artist with his pre-fame recordings) and CBS, Inc. v. Springboard Int'l Records, 429 F. Supp. 563, 569 (S.D.N.Y. 1977) (same)).

Finally, the Court notes that every advertisement clearly identifies the band as "Hollywood Rose," not "Guns N' Roses," and each describes the historical nature of the recordings. (Perera Sec. Supp. Decl., Exs. A-F). Each ad contains some form of the following,

> A historical and monumental musical document of the very first demos recorded by Axl Rose and Izzy Stradlin, before they became one of the biggest rock bands in American history, Guns N' Roses! Features 5 demo recordings that haven't been heard in decades, plus new remixes by former GN'R member Gilby Clarke and contributions from original gunner, Tracii Guns!

(Id.). Further, two of the advertisements also contain the additional words

> These rare treasures showcase the raw talent of Axl and Izzy that was just beginning to blossom into the legendary GN'R! There is still an immense amount of respect and interest in Guns N' Roses today and every fan of this incredible band will want to own this piece of history.

(Id. Exs. A, B). One of the ads even contains an abbreviated version of the Hollywood Rose creation story found in the Album insert. (Id. Ex. B). These facts also weigh in Plaintiff's favor. (See Order of 11/23/04 citing Springboard, 429 F. Supp. at 569 (finding likelihood of confusion as to endorsement in an infringement analysis where the album did not even contain the year of the recordings) and Benson, 452 F. Supp. at 518 (finding likelihood of confusion as to endorsement in an infringement analysis where the party promoted the old recordings as "new" material).

As Plaintiff has met all three prongs of the New Kids test, it is entitled to a nominative fair use defense to its use of the trademark in the advertisements, just like in the Album. Further, as Defendants' unfair competition claim are tied to the unlawful nature of Plaintiff's alleged trademark infringement, it falls along with the trademark

1  claims. See Denbicare U.S.A. v. Toys "R" Us, Inc., 84 F.3d 1143, 1152 (9th Cir.

2  1996) ("State common law claims of unfair competition and actions pursuant to

3  California Business and Professions Code § 17200 are 'substantially congruent' to

4  claims made under the Lanham Act.") (citations omitted); New Kids, 971 F.2d at 305,

5  309 (finding that the nominative fair use defense applied for claims of trademark

6  infringement as well as for a California unfair competition claim where the same

7  conduct was asserted for both); Ives Labs. Inc. v. Nature's Own Labs., 529 F. Supp.

8  347, 349-50 (C.D. Cal. 1981) (finding that the plaintiff's trademark infringement claims

9  also established violations of California's unfair competition law).

10 **C. DEFENDANTS' RIGHT OF PUBLICITY CLAIMS**

11      Plaintiff is also entitled to summary judgment on Defendants' statutory, Cal.

12 Civ. Code § 3344, and common law right of publicity claims. The advertisements use

13 the names and likenesses of Defendants no more than the Album itself, which the

14 Court has already found entitled to a public interest defense to right of publicity

15 violations. (See Order of 11/23/04 at 24-28 citing Dora v. Frontline Video, 15 Cal.

16 App. 4th 536, 543 (1993) and Montana v. San Jose Mercury News, Inc., 34 Cal. App.

17 4th 790, 793 (1995)).

## III.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff-Counterdefendant's motion for summary judgment on all pending counterclaims.

IT IS SO ORDERED.

DATED: April 12, 2005

Judge Gary Allen Feess
United States District Court

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FAX DELIVERY ON PLAINTIFF/DEFENDANT (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT FAX NUMBER OF RECORD ON THIS DATE.

4-13-05

Deputy Clerk